UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NAKHLEH HANHAN,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Case No. ED CV 13-2362-DFM<br><br>MEMORANDUM OPINION AND<br>ORDER |

        Plaintiff Nakhleh Hanhan ("Plaintiff") appeals the decision of the Administrative Law Judge ("ALJ") denying his application for Social Security disability benefits. The Court concludes that the ALJ did not err in either rejecting the opinion of Plaintiff's treating psychiatrist or discrediting the testimony of Plaintiff's wife. The ALJ's decision is therefore affirmed and the matter is dismissed with prejudice.

///
///
///

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for Social Security disability insurance benefits alleging that he became disabled on March 8, 2010. The ALJ found that Plaintiff had the severe impairments of diabetes, neuropathy, hypertension, high cholesterol, schizoaffective disorder, anxiety, and depression. Administrative Record ("AR") 12. The ALJ concluded, however, that Plaintiff was not disabled because he could perform work available in significant numbers in the national and regional economy. AR 18-19.

# II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) considering the opinion of treating psychiatrist Dr. Salvador A. Arella and (2) assessing the statements of Plaintiff's wife, Sousse Yaacoubian. See Joint Stipulation ("JS") at 2-3.

# III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a

whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21.

**IV.**

**DISCUSSION**

**A.**   **<u>The ALJ Properly Considered the Opinion of the Treating Physician</u>**

Plaintiff contends that the ALJ failed to give specific and legitimate reasons supported by substantial evidence for discounting Dr. Arella's opinion as expressed in two Mental Disorder Questionnaires. JS at 3, 5.

**1.**   **Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. § 416.927(c)(2); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. <u>Lester</u>, 81 F.3d at 830. Thus, when a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  <u>Id.</u> When a treating doctor's opinion is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the treating doctor's opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Lester</u>, 81 F.3d at 830-31. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144,

3

1149 (9th Cir. 2001).

     **2.**    **Factual Background**

    Dr. Arella first saw Plaintiff on November 22, 2010. AR 645; <u>see</u> AR 646-47. On February 28, 2011, Dr. Arella completed the first of two mental disorder questionnaires. AR 641-45. Dr. Arella reported that Plaintiff needed assistance keeping appointments, reported hearing voices, and had been admitted to Arrowhead Hospital for mental-health issues. AR 641. Dr. Arella noted that Plaintiff was depressed and had been diagnosed with schizoaffective disorder. <u>Id.</u> Dr. Arella described Plaintiff's then-current mental status as "emotionally labile" and "fearful," with "poor judgment," an inability to "cope," insomnia, decreased energy, "quiet feelings," and mood swings. AR 642-43. Dr. Arella reported that Plaintiff needed assistance to go shopping, was unable to interact socially except with family, could not sustain attention, and could not adapt to changes or stresses in the work environment. AR 643-44. Dr. Arella diagnosed Plaintiff as suffering from schizoaffective disorder and deemed his prognosis "guarded." AR 645. The doctor noted treatment with prescription medication. <u>Id.</u>

    On October 6, 2011, Dr. Arella completed another Mental Disorder Questionnaire. AR 707-10. He indicated that Plaintiff's wife made and tracked his mental-health appointments and helped him with personal care. AR 707. The doctor noted that Plaintiff's general appearance declined during periods of intense depression. <u>Id.</u> Dr. Arella noted Plaintiff's reports of auditory and visual hallucinations that caused anxiety, paranoia, difficulty sleeping, self-isolating behavior, and occasional suicidal ideation. <u>Id.</u> The doctor also noted Plaintiff's report that, as a young child, he saw people shot and killed during war in the Middle East, and that he suffered nightmares and flashbacks as an adult. <u>Id.</u>

*/ / /*

4

Dr. Arella described Plaintiff as "present[ing] a constricted range" of affect, unstable, depressed, anxious, and occasionally smiling. AR 708. In the spaces pertaining to Plaintiff's current level of functioning, Dr. Arella noted Plaintiff's reports of inability to focus, loss of short-term memory, poor judgment, and tendency to become overwhelmed and act out. Id. Plaintiff and his wife also reported that he was unable to function independently as a result of his lack of concentration, requiring her guidance and reminders in completing tasks. Id.

Dr. Arella reported medications prescribed to treat Plaintiff's auditory hallucinations, insomnia, and stress. Id. The doctor assessed Plaintiff as suffering from schizoaffective disorder and having a GAF of 46 and recommended that he continue with his medications. AR 710.

**3.   Analysis**

Contrary to Plaintiff's contention, the ALJ gave specific and legitimate reasons based on substantial evidence for discounting Dr. Arella's opinion.[1] As an initial matter, Plaintiff's contention (JS at 5) that the ALJ failed to indicate whether he accepted or rejected Dr. Arella's opinion or what weight it should be afforded is incorrect. The ALJ expressly found that Dr. Arella offered no rationale for his vague conclusion that Plaintiff's disability application "should be approved" based on Plaintiff's reported functional limitations. AR 17, 710. For that reason alone, the ALJ concluded that Dr. Arella's opinion as expressed in the questionnaires was entitled to "no

---

[1] Dr. Arella's opinion was contradicted by the findings of consulting examining psychologist Margaret Donohue, PhD, who found Plaintiff's behavior precluded a diagnosis and opined that "the best diagnosis to describe [Plaintiff's] condition is malingering." AR 657. Dr. Arella's findings were further contradicted by the state-agency physicians, who found insufficient evidence of a mental-health impairment. AR 673, 677, 681, 705.

probative weight." AR 17. This is a proper basis for rejecting a treating physician's opinion. See Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.

Moreover, the ALJ noted that the questionnaire forms appeared to have been completed "as an accommodation to the claimant." AR 17; see Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996) (finding ALJ properly questioned doctor's credibility where opinion letter was solicited by claimant's counsel and was "worded in such a way that it strikes [the ALJ] as an effort by the physician to assist a patient even though there is no objective medical basis for the opinion"). Indeed, when Dr. Arella completed the first questionnaire, he had seen Plaintiff only three times. See AR 646-50. It is therefore not surprising that the doctor's responses on the initial questionnaire reflect information reported by Plaintiff at his first visit, including Plaintiff's report that he had been diagnosed with schizoaffective disorder. Compare AR 641-45 with AR 646. Even the diagnosis of schizoaffective disorder appears to have been given by a different doctor and reported to Dr. Arella by Plaintiff. See AR 641. Similarly, the portion of the second questionnaire pertaining to Plaintiff's ability to function – which largely tracked the Paragraph B criteria, see 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.03(B); AR 673 – reflected not medical opinion but only reports from Plaintiff and his wife concerning his difficulties with memory and attention. See AR 708-09 (noting their reports of Plaintiff's inability to function independently, lack of focus, loss of short-term memory, poor judgment, and tendency to become overwhelmed and act out). Even then, Dr. Arella did not clearly say, as Plaintiff suggests (JS at 5), that Plaintiff is "not able to work," but only recommended vaguely that his disability application "should be approved" based on his reported functional limitations. AR 710.

///

1    That Dr. Arella's opinion relies so heavily on Plaintiff's (and his wife's)

2  reports of his symptoms is itself a basis to reject Dr. Arella's opinion,

3  particularly, as here, when the ALJ found that Plaintiff's complaints were "less

4  than fully credible" – a finding Plaintiff does not challenge. AR 17; see Fair v.

5  Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (finding ALJ properly disregarded

6  physician's opinion when premised on claimant's subjective complaints, which

7  ALJ had already discounted); Evans v. Comm'r of Soc. Sec. Admin., 320 F.

8  App'x 593, 597 (9th Cir. 2009) ("An ALJ may appropriately reject a

9  physician's opinion that is based on a claimant's non-credible subjective

10  complaints."). Indeed, as the ALJ noted, AR 17, the only other mental-health

11  specialist to examine Plaintiff, consulting examining psychologist Margaret

12  Donohue, PhD, found his malingering so obstructive that she could not even

13  diagnose him. AR 657; see AR 653-57 (cataloguing effects of Plaintiff's

14  malingering on various diagnostic exams).

15    Further, the ALJ found that Plaintiff's limited and conservative mental-

16  health treatment contradicted Dr. Arella's report. AR 17. Although the ALJ

17  found that Plaintiff suffered from severe mental-health impairments, the ALJ

18  noted that the record did not support Plaintiff's allegations of debilitating

19  mental impairments. Id.[2] Rather, the limited record of mental-health treatment

20  showed that Plaintiff had been conservatively treated with medication –

21  including by Dr. Arella. See AR 607, 688-95, 752, 756-61.

22  ///

23

24    [2] Moreover, contrary to Plaintiff's contention (JS at 6), the ALJ

25  incorporated into Plaintiff's RFC restrictions consistent with Plaintiff's

26  reported symptoms and limitations. See AR 14 (providing for occasional

27  contact with employees and supervisors, no contact with the general public,

28  occasional changes in work setting, and occasional work-related

decisionmaking).

7

Additionally, the ALJ also noted the effectiveness of Plaintiff's treatment. See 20 C.F.R. § 404.1529(c)(3)(iv)-(v); Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff testified that his mental impairments have improved with that treatment, AR 33, and his medical records report the same. For instance, Plaintiff's auditory hallucinations appeared to have abated with treatment. See AR 694 (noting "better on voices"); 756 (noting "no hallucinations"). Likewise, a July 20, 2012 mental status examination indicated that, other than his depressed affect, Plaintiff's mental function was "within normal limits" and he had "fair insight and judgment." See AR 752; see also AR 692 (reporting decreased anger); 693 (reporting decreased depression and forgetfulness); 751 (reporting "doing well" on current medications and sleeping better); 756 (reporting he was looking for work and was happy because he had secured a job interview).[3] Moreover, although Dr. Arella reported that Plaintiff had a Global Assessment Functioning ("GAF") score of 45 to 46 during his first year of treatment, AR 710, the doctor's own notes reflect an assessment of 50 to 65 on November 22, 2010, AR 611, reflecting mild to moderate symptoms. AR 16; see Diagnostic

---

[3] Plaintiff's suggestion (JS at 5) that the ALJ was required to summarize Dr. Arella's questionnaire responses is misplaced. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)) (upholding ALJ's rejection of treating physician's letter when ALJ did not specifically discredit statements in letter but instead addressed relevant information from doctor's treatment notes)). Where, as here, Dr. Arella's questionnaire responses reflect primarily reports from Plaintiff and his wife, summarizing the responses would have added little to the ALJ's assessment of Dr. Arella's opinion and treatment notes.

8

1 | and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000).

2 |      The Court is also not persuaded by Plaintiff's contention (JS at 8-9) that
3 | the ALJ should have sought additional medical evidence from Dr. Arella. An
4 | ALJ's duty to further develop the record is triggered only when the record
5 | contains ambiguous evidence or is inadequate to allow for proper evaluation of
6 | the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here,
7 | the record was adequate to enable the ALJ to determine that Plaintiff did not
8 | suffer from a disabling mental impairment. See Brinegar v. Astrue, 337 F.
9 | App'x 711, 712 (9th Cir. 2009).

10 |      In sum, the ALJ gave specific and legitimate reasons based on
11 | substantial evidence in the record for rejecting Dr. Arella's opinion. See Lester,
12 | 81 F.3d at 830-31. Moreover, the ALJ legitimately rejected Dr. Arella's
13 | opinion that Plaintiff "should be approved" because that opinion was brief,
14 | conclusory, and unsupported by clinical findings. See Thomas, 278 F.3d at
15 | 957; Tonapetyan, 242 F.3d at 1149. The ALJ did not err in rejecting Dr.
16 | Arella's opinion.

17 | **B.**   **The ALJ Did Not Err in Assessing Plaintiff's Wife's Testimony**

18 |      Plaintiff also asserts that the ALJ failed to properly consider the
19 | testimony of Plaintiff's wife, Sousse Yaacoubian. JS at 3.

20 |      A lay witness can provide testimony about a claimant's symptoms and
21 | limitations. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay
22 | testimony as to a claimant's symptoms is competent evidence that an ALJ
23 | must take into account, unless he or she expressly determines to disregard such
24 | testimony and gives reasons germane to each witness for doing so." Lewis v.
25 | Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d
26 | 915, 918-19 (9th Cir. 1993).

27 |      The ALJ found that Yaacoubian's testimony and written reports of
28 | Plaintiff's symptoms and limitations were not supported by the clinical and

diagnostic evidence in the record. AR 15; <u>see</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005) ("inconsistency with medical evidence" is a germane reason for discounting lay-witness testimony). Moreover, the ALJ emphasized that Yaacoubian is not a medical professional, so is not competent to diagnose Plaintiff or argue the severity of his symptoms, and is less persuasive than his medical providers on these issues. AR 15; <u>see, e.g.</u>, AR 191 (stating her husband cannot do house- or yardwork because of depression and schizoaffective disorder); 200 (reporting that her husband becomes suicidal); 203 (stating that her husband cannot manage money because of "his physical and mental [in]stability"); <u>Nguyen</u>, 100 F.3d at 1467 (noting that lay witnesses are competent to testify as to claimant's symptoms or how an impairment affects his ability to function but are not competent to make medical diagnoses). The ALJ further noted that Yaacoubian's statements about Plaintiff's limitations essentially mirrored Plaintiff's own, which the ALJ properly discounted as not being fully credible, a finding Plaintiff does not challenge. AR 15; <u>see</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012) ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."). Accordingly, the ALJ gave germane reasons for giving "little weight" to the statements of Plaintiff's wife.[4]

---

[4] The ALJ also cited Yaacoubian's "pecuniary and filial motivation" to help her husband secure benefits as a basis upon which to disregard her statements. AR 15. The Ninth Circuit has held that the interest of a family member is not a sufficient basis upon which to reject her testimony. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."); <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (finding error, albeit harmless, in ALJ's reliance on fact that spouse was "interested party" as a basis for rejecting her testimony). Because the ALJ

# V.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:   June 30, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

---

provided other clear, convincing, and germane reasons for rejecting Yaacoubian's testimony, however, his erroneous reliance on her interest in Plaintiff's receipt of benefits was harmless. See Valentine, 574 F.3d at 694.

11